**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MOLLY GOWAN,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>STRYKER CORPORATION, et al.,<br><br>　　　　　Defendants. | Case No. 20-cv-00339-BLF<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: ECF 62] |

Plaintiff Molly Gowan is suing Defendants Stryker Corporation and Stryker Sales Corporation (collectively, "Stryker") under California law for discrimination, harassment, and retaliation based on gender; failure to promote because of discrimination on the basis of sex; negligent hiring, supervision and retention; wrongful constructive termination; retaliation; and intentional infliction of emotional distress ("IIED"). *See* Pl.'s Req. for Judicial Not., Ex. 14, Third Am. Compl. ("3AC"), ECF 16. However, her timely allegations are based on conduct that occurred outside of California.

Stryker has filed a motion for summary judgment, arguing as a threshold issue that Ms. Gowan cannot bring claims under California law because California law cannot be applied extraterritorially. *See* Mot., ECF 62. Ms. Gowan opposes this motion on the basis that the Court should consider the totality of the circumstances, including conduct that occurred outside of California, because the conduct was allegedly ratified in California. *See* Opp'n, ECF 72. While the Court is sympathetic to Ms. Gowan's plight, as a matter of law, she cannot bring claims under California law based on conduct that occurred outside of California, and, even if she had worked in California, her common law claim for IIED is barred by the California Workers' Compensation Act. The Court must GRANT Stryker's motion.

## I. BACKGROUND

The Court begins with a brief explanation of the relevant legal principles before summarizing the relevant facts, as an understanding of the legal framework informs which facts are relevant to this dispute.

### A. California's Fair Employment and Housing Act ("FEHA")

Ms. Gowan brings her discrimination, harassment, retaliation, and wrongful constructive termination claim under California's Fair Employment and Housing Act, Cal. Gov't Code §§ 12900 *et seq.*, ("FEHA"). 3AC ¶¶ 19-36; 40-44. To avoid an impermissible extraterritorial application of state law, a "crucial element" of a plaintiff's claim must have occurred in California. *English v. Gen. Dynamics Mission Sys., Inc.*, 808 F. App'x 529, 530 (9th Cir. 2020) (citing *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 119 (Cal. 2006)).

"In order to bring a civil action under FEHA, the aggrieved person must exhaust the administrative remedies provided by law." *Yurik v. Superior Court*, 209 Cal. App. 3d 1116, 1121 (Cal. Ct. App. 1989). "Exhaustion in this context requires filing a written charge with DFEH [Department of Fair Employment and Housing] within one year of the alleged unlawful employment discrimination, and obtaining notice from DFEH of the right to sue." *Mock v. California Dep't of Corr. & Rehab.*, No. 1:15-CV-01104-MJS, 2015 WL 5604394, at *7 (E.D. Cal. Sept. 23, 2015) (citing *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 492 (Cal. 1996). The administrative complaint must be filed within one year of the date on which the unlawful practice occurred. Cal. Gov. Code, § 12960(e); *Romano*, 14 Cal. at 492.

It is undisputed that Ms. Gowan filed a DFEH charge alleging discrimination and harassment based on sex/gender and retaliation on March 30, 2018. Ex. A, Decl. of Andrew Quigley ("Quigley Decl."), Ex. 41, March 30, 2018 DFEH Complaint, ECF 64-1. Therefore, Ms. Gowan must allege some conduct that occurred no earlier than March 30, 2017 to proceed on her FEHA claims. The Court will review all the relevant conduct Ms. Gowan alleges during this time period.

### B. Ms. Gowan Alleges No Conduct That Occurred in California After March 30, 2017, While Working as a Sales Representative in Colorado[1]

In March 2017, Ms. Gowan was working for Stryker as a sales representative in Colorado, and her territory was Northern Colorado. Decl. of Molly Gowan ("Gowan Decl.") ¶ 6, ECF 72-1; Ex. 1, Gowan Dep. 63:11-64:3, ECF 63-1; Decl. of Olivia Cream ("Cream Decl.") ¶ 10, ECF 64-3. She had held this position since July 2014. Gowan Decl. ¶ 6. Stryker is headquartered in Michigan. Cream Decl. ¶ 3. Ms. Gowan reported to Lindsay Conley, a Colorado resident who is not a party to this action.[2] Cream Decl. ¶ 12. Mr. Conley's territory included several states—Colorado, Utah, New Mexico, Wyoming, South Dakota, and Nevada—and did not include California. *Id.*

Ms. Gowan testified that on May 1, 2017,[3] she met with Mr. Conley to discuss her concerns with her working conditions—specifically, Mr. Conley's treatment of her and her opportunity for growth. Gowan Decl. ¶ 20. According to Ms. Gowan's testimony, Mr. Conley was angry with her about a "reply all" email she had sent in December 2016. Gowan Dep. 66:18-70:21. This email came up during their discussion, which also included Ms. Gowan asking Mr. Conley if he thought she could be a regional manager. *Id.* 70:16-72:17. According to Ms. Gowan, Mr. Conley told her, "not if you keep sending e-mails like the one you did." *Id.* 72:4-9. According to Ms. Gowan, Mr. Conley also told her,

> I started those three things and I could have fucking annihilated you on any one of the three responses, but instead, I decided not to send that. So if you keep doing that stuff, no I don't think you can do the job. But if you get better and kind of toe the line a little bit more, then possibly.

*Id.* 72:1-23.

---

[1] Allegations regarding selection for regional manager training occurred prior to March 30, 2017, and therefore are not relevant to the analysis of whether Ms. Gowan has an actionable claim under FEHA. Molly Gowan Dep. ("Gowan Dep.") 100:13-101:22, ECF 63-1; Decl. of Molly Gowan ("Gowan Decl.") ¶ 16, ECF 72-1; Decl. of Tommy Van Galder ¶ 5, ECF 65-4.
[2] Conley was dismissed for lack of personal jurisdiction. Pl.'s Req. for Judicial Not., Ex. 13, State Court Order, ECF 16.
[3] There is evidence in the record that suggests this conversation did not happen on May 1, 2017, but in fact happened earlier than March 30, 2017. Ms. Gowan testified that this conversation happened before her leadership day in Mr. Conley's office. Gowan Dep. 72:1;4, 80:6-20. Ms. Gowan's leadership day in Mr. Conley's office appears to have been March 1, 2017. Ex. 45, Calendar Invite, ECF 64-1; *see also* Gowan Dep. 80:15-20; 83:2-9. Interpreting the facts in the light most favorable to Ms. Gowan he Court includes these allegations here.

In early May 2017, Ms. Gowan, while in Colorado, complained about Mr. Conley to Paul Glynn. Gowan Dep. 147:11-148:1. Mr. Glynn was based in Iowa and was the vice president of U.S. sales for Stryker Endoscopy, a business unit within Stryker Sales Corporation. Decl. of Paul Glynn ¶¶ 2, 8, ECF 65-2. According to Ms. Gowan, she told Mr. Glynn that Mr. Conley was disparaging her, had told her he was going to fucking annihilate her, told her that women had cried when going through regional manager training, and questioned her ability to perform. Gowan Dep. 149:1-13. She also complained about Mr. Conley's general behavior, including the fact that he was absent and slow to respond to emails. *Id.* 149:7-13. According to Ms. Gowan, Mr. Glynn told her he was sorry she was going through this and would look into things and get back to her. Gowan Dep. 149:17-23. A few weeks later, Mr. Glynn got back to Ms. Gowan, who was still in Colorado, and let her know that neither she nor Mr. Conley were going anywhere, and she might not get a regional manager position because things change, and you never know what will happen. *Id.* 151:12- 152:7.

On or around May 30, 2017, Ms. Gowan began to receive warnings from colleagues Matthew Wickiser and Nicolette Mechem that Mr. Conley was out to get her and trying to build a case against her. Gowan Decl. ¶¶ 17-18.[4] Ms. Mechem, like Ms. Gowan and Mr. Conley, was based in Colorado. Decl. of Nicolette Mechem ¶ 2, ECF 65-3. It is unclear where Mr. Wickiser was based. Ms. Gowan told Ms. Mechem that she feared she would lose her job. Ex. 17, Mechem Dep. 56:11-16, ECF 72-2.

In May 2017, Ms. Gowan was at a work event in Dallas, Texas, and again complained about Mr. Conley to Mr. Glynn and Tommy Van Galder, the director of sales. Gowan Decl. ¶ 23. According to Ms. Gowan, Mr. Glynn advised her that he believed she would be better suited for a position in human resources, particularly if she wanted to move into management. *Id.* Ms. Gowan assumed this meant that her only path to management was to move back into the human resources department, where she had started her career at Stryker. Gowan Decl. ¶¶ 2, 23.

---

[4] Ms. Gowan's conversations with her colleague Ryan Edwards regarding Mr. Conley occurred in January or February 2017. Gowan Dep. 120:15-122:6.

### C. California-based Conduct Alleged By Ms. Gowan After Starting Her Human Resources Manager Position on July 1, 2021

On or around July 1, 2017, Ms. Gowan started her new role as a human resources manager. Gowan Decl. ¶ 25. This role came with a 40 percent pay cut from her previous role as a sales representative. *Id.* Her new role was based in San Jose. *Id.* However, Ms. Gowan and her family lived with her in-laws in Texas[5] while attempting to find a home in San Jose. Ex. 58, Suppl. Gowan Dep. 140:24-142:7, ECF 78-1. During her four-month tenure in this role, Ms. Gowan continued to own a house in Colorado and returned to that house after her resignation. Gowan Decl. ¶¶ 26, 35. Ms. Gowan testified that her new role did not support Mr. Conley's sales team. Ex. 14, Defs.' Gowan Dep. Volume II 160:10-12, ECF 63-1. Ms. Gowan did continue to hear from colleagues about emails Conley was writing about her from his workplace in Colorado. Gowan Decl. ¶¶ 27, 31.

In August 2017, while in San Jose, Ms. Gowan complained about Mr. Conley's past conduct to Tiffany Zakszeski, the director of human resources supporting Stryker Sales Corporation, and Olivia Cream, a senior human resources manager based in Michigan. Gowan Dep. 253:2-23; Ex. H, Decl. of Tiffany Zakszeski ¶ 2, ECF 65-5; Cream Decl. ¶¶ 11, 33. Ms. Gowan testified that her complaint was investigated. Gowan Dep. 255:23-25.

Ms. Gowan detailed two other instances of conduct occurring in California around this time. In her human resources role, she received a complaint from Mary Byerly, a San Jose-based director of marketing. Pl.'s Gowan Dep. Volume II 113:10-15, 117:1-2, ECF 72-2. According to Ms. Gowan, Ms. Byerly reported that Mr. Conley and Mr. Van Galder had made sexist remarks on a conference call. *Id.* 113:10-116:25. Ms. Byerly told Ms. Gowan that she did not want to escalate this report, but Ms. Gowan went to Ms. Zakszeski and Ms. Cream and let them know there was a problem. *Id.* 115:12-115:23. Ms. Zakszeski and Ms. Cream told Ms. Gowan that they could not open a complaint unless Ms. Byerly filed one herself. *Id.* 115:24-116:2. Ms. Gowan filed it on her

---

[5] Ms. Gowan's declaration incorrectly states that she lived in San Jose with her in-laws. Gowan Decl. ¶ 25. But in her earlier deposition, she testified that her in-laws lived in Texas and her family relocated temporarily to Texas. Gowan Dep. 140:24-142:7. The Court informed Ms. Gowan's counsel at the hearing that this was a serious transgression in a document signed by Ms. Gowan under penalty of perjury. Ms. Gowan's counsel did not maintain at the hearing that Ms. Gowan's in-laws lived in San Jose.

5

own anyway. *Id.* 116:2. After filing the complaint, Ms. Gowan testified that she felt "shunned" and "ostracized," but when asked for detail, Ms. Gowan said the next time she saw Mr. Glynn (who was based in Iowa), he did not hug her like he used to and she felt uncomfortable because things were awkward between them. *Id.* 113:20-114:17.

Mr. Conley was ultimately terminated for failing to comply with an ongoing investigation (the Parties do not specify if it was the investigation of Ms. Gowan's complaints on behalf of herself and/or Ms. Byerly). Ex. 39, Paul Glynn Dep. 57:11-18, ECF 64-1. Mr. Conley's last day with Stryker was December 18, 2017. Decl. of Lindsay Conley ¶ 1, ECF 64-2.

Ms. Gowan also testified about an October 2017 meeting in San Jose that she attended with Brett Ladd, a vice president and general manager at Stryker. Gowan Decl. ¶ 32. The meeting was for staffing review, and Ms. Gowan attended in her capacity as a human resources employee. Defs.' Gowan Dep. Volume II 38:22-39:3. They were discussing the performance and career path of a woman who was having some difficulties getting the respect of her team. *Id.* 39:3-7.

The testimony from Ms. Gowan's deposition and her declaration differ on what exactly was said. According to Ms. Gowan's deposition, Mr. Ladd asked about the woman and her work issues they were discussing, "Is it because she's a woman?" *Id.* 39:7-8. Mr. Ladd then referenced another woman and said, "We all know that Shilpa can rub people the wrong way sometimes." *Id.* 39:8-9. According to Ms. Gowan's declaration, Mr. Ladd first asked if the woman they were discussing suffered from the same personality aliments as Shilpa before exclaiming, "It is because she a woman! We all know that Shilpa can rub people the wrong way." Gowan Decl. ¶ 32. Ms. Gowan testified that Mr. Ladd's comment shocked and disgusted her, and it also caused her to realize that working in human resources versus sales would not shield her from harassing comments. *Id.*

Later in October 2017, Ms. Gowan informed Ms. Zakszeski that she would not be relocating to San Jose. Gowan Decl. ¶¶ 33, 35. Ms. Gowan acknowledged that this decision was effectively a resignation. Gowan Dep. 143:7-8. On October 31, 2017, she emailed the president of Stryker Endoscopy (her unit of the company), Andy Pierce, and let him know she would not be relocating. Ex. 27, Pierce Email, ECF 63-2. Ms. Gowan wrote, "I love Stryker - and specifically I

6

love our Endo BU [business unit]; I do not say that lightly." *Id.* Ms. Gowan later testified that this statement was true and accurate when she made it. Defs.' Gowan Dep. Volume II 128:16-129:13. Ms. Gowan stated in her deposition that she emailed Mr. Pierce "as a courtesy because I was familiar with his strong connections in the industry and did not want Pierce to take any action to prevent me from obtaining other opportunities outside of Stryker." Gowan Decl. ¶ 34. Gowan testified that she told Mr. Pierce she was leaving because her husband had received a new job opportunity, but this was not the real reason for her departure. *Id.* ¶ 34. Ms. Gowan testified that she left Stryker not because of any one person, but because of the culture. Defs.' Gowan Dep. Volume II 159:21-23.

After her effective resignation in October 2017, Ms. Gowan remained in her role until December 29, 2017. Ex. 32, Dec. 14, 2017 Email, ECF 63-2. She testified that she remained in her role for two additional months because she did not want to "burn a bridge." Defs.' Gowan Dep. Volume II 159:7-16. During this time, Ms. Gowan pursued other roles at Stryker and submitted her resume to multiple positions within the company. Gowan Dep. 144:9-25.

In a December 7, 2017 meeting and subsequent December 8, 2017 email with Ms. Zakszeski and Kim Larson, Ms. Gowan requested severance from Stryker to compensate her for the way Mr. Conley treated her. Ex. 31, Severance Email, ECF 63-2. In a December 14, 2017 email, Ms. Zakszeski informed her that "Stryker does not pay severance to employees who voluntarily resign from the company after only 4 months in a new role." Ex. 32, Dec. 14, 2017 Email.

**II.  LEGAL STANDARD**

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of informing the Court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). In judging evidence at the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559-60 (2006). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Celotex*, 477 U.S. at 325; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

If the moving party meets its initial burden, the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses. *Nissan Fire*, 210 F.3d at 1103. If the nonmoving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. "[T]he 'mere existence of a scintilla of evidence in support of the [nonmovant's] position'" is insufficient to defeat a motion for summary judgment. *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 891 F. Supp. 510, 513–14 (N.D. Cal. 1995) (quoting *Liberty Lobby*, 477 U.S. at 252). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *First Pac. Networks*, 891 F. Supp. at 514 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III. DISCUSSION

#### A. Evidentiary Objections

Stryker objects to portions of Ms. Gowan's declaration submitted in opposition to

summary judgment and portions of the declarations from Brady McDonnell, Constance Bargiband, Constance Newill Rose, Kevin Gohel, and Melody Roppel. Opp'n 15.

"To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) (quoting *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001)). At this stage, the focus is on the admissibility of the contents of the evidence, not its form. *Fraser*, 342 F.3d at 1036; *see also JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) ("[A]t summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony.") "Accordingly, district courts in this circuit have routinely overruled authentication and hearsay challenges at the summary stage where the evidence could be presented in an admissible form at trial, following *Fraser*." *Hodges v. Hertz Corp.*, 351 F. Supp. 3d 1227, 1232 (N.D. Cal. 2018) (citations omitted). Accordingly, the Court OVERRULES Stryker's evidentiary objections to the third-party declarations on the basis that the evidence could be presented in an admissible form at trial.

Regarding Ms. Gowan's declaration, "[t]he general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) (citations omitted). "[I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* (citations omitted). "[T]he district court must make a factual determination that the contradiction was actually a 'sham,'" and not the result of "of an honest discrepancy, a mistake, or the result of newly discovered evidence" to find that it does not create a triable issue of fact. *Id.* 266-67.

The Court finds that the assertion in Ms. Gowan's declaration that she lived with her in-laws in San Jose is a sham. Gowan Decl. ¶ 25. On December 11, 2019, Ms. Gowan testified in detail about her family's decision to leave Colorado and move to Texas temporarily when she was

working in San Jose. Suppl. Gowan Dep. 140:24-142:7. She was directly asked, "And why did you relocate to Texas versus California at that time?" *Id.* 141:3-4. Her answered centered on the child-care help her in-laws provided. *Id.* 141:22-142:7. In Ms. Gowan's signed, sworn declaration, dated June 10, 2021, however, she writes, "In this position, I worked from San Jose, California, where I lived with my in-laws while attempting to find a home." Gowan Decl. ¶ 25. The Court finds this later declaration to be an attempt to create a sham issue of fact on a material issue in the case and thus SUSTAINS Stryker's objection to this fact in the Gowan Declaration.

The Court declines to find the other portions of Ms. Gowan's declaration subject to Stryker's objections sham issues of fact. To the extent there are discrepancies with her deposition testimony, these are the kinds of errors that could be the result of an honest misstatement or mistake. Accordingly, the Court OVERRULES the rest of Stryker's objections to the Gowan Declaration.

**B.     FEHA Does Not Apply Extraterritorially to Ms. Gowan's Claims**

Ms. Gowan has brought claims for discrimination, harassment, retaliation, failure to promote, and wrongful termination under FEHA. Mot. 13-21. She also brings a derivative claim for failure to prevent discrimination, harassment, or retaliation under FEHA as well. Mot. 22. Stryker argues that Ms. Gowan cannot bring any claims under FEHA because California law cannot apply to conduct that allegedly injures a non-California resident outside of California. Opp'n 9-19. Stryker is correct, and Ms. Gowan does not have any actionable claims under FEHA.

FEHA does protect employees from discrimination, harassment, retaliation, and wrongful termination by their employer. Cal. Gov. Code § 12940(a), (g), (j). There is a cause of action for failure to prevent discrimination or harassment under subsection K as well. Cal. Gov. Code § 12940(k). To establish a prima facie claim for discrimination under FEHA, Ms. Gowan must show that: (1) she was part of a protected class; (2) she was qualified for her position or performing competently in the position she held; (3) she suffered an adverse employment action such as termination; and (4) some other circumstance suggests discriminatory motive. *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 355 (Cal. 2000). To establish a claim for harassment, Ms. Gowan must show she experienced unwanted conduct based on sex or gender that was "sufficiently severe or

10

pervasive to alter the conditions of her employment and create an abusive work environment." *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 279 (Cal. 2006). "[T]o establish a prima facie case of retaliation…, a plaintiff must show (1) he or she engaged in a 'protected activity, (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005). And to establish a wrongful termination claim via constructive discharge, as Ms. Gowan attempts to do, she must establish "that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1251 (1994).

Critically, though, FEHA does not "apply to nonresidents where, as here, the tortious conduct took place out of this state's territorial boundaries." *Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850, 1852 (Cal. Ct. App. 1996). FEHA also does not apply to California residents when the offending conduct happens outside of the state of California. *Anderson v. CRST Int'l, Inc.*, 685 F. App'x 524, 526 (9th Cir. 2017).

*Anderson* is instructive here.[6] Ms. Anderson was a California resident and female commercial truck driver who departed from her employer's Fontana, California, facility with a male colleague who was the "lead driver" for the trip. *Anderson v. CRST Int'l, Inc.*, No. CV 14-368 DSF (MANx), 2015 WL 1487074, at *1, *4 (C.D. Cal. Apr. 1, 2015). Ms. Anderson claimed she was repeatedly sexually harassed by her male colleague on out-of-state trips in December 2012 and January 2013. *Id.* *1-*2. For example, her male colleague repeatedly talked about his alleged time in the porn industry and drove with his pants unzipped and unbuttoned, and they would fall down when he stood up. *Id.* *2. Ms. Anderson had asked him to stop talking about these subjects and wear his pants properly, but her male colleague refused. *Id.* *1-*2. On

---

[6] The Court takes the facts from the district court order that was affirmed by the Ninth Circuit. *See Anderson v. CRST Int'l, Inc.*, No. CV 14-368 DSF (MANx), 2015 WL 1487074, at *1 (C.D. Cal. Apr. 1, 2015), *rev'd on other grounds*, 685 F. App'x 524 (9th Cir. 2017). The Ninth Circuit fully affirmed the district court's dismissal of the FEHA claims. Anderson, 685 F. App'x at 526.

11

1  December 31, 2012, their truck broke down in Pennsylvania, and the company would only pay for
2  one hotel room despite Ms. Anderson requesting a separate room. *Id.* *2. On the night of January
3  1, 2012, Ms. Anderson awoke to find her male colleague "naked and 'coming up off his bed
4  toward' her." *Id.* When he saw that Ms. Anderson was awake, "he stopped rising and rolled back
5  to his bed and sat on the far side of the bed with his head in his hands." *Id.* After a few minutes, he
6  stood up "'completely naked,' picked up his pants from the floor and put them on." *Id.* On January
7  3, Ms. Anderson alerted her supervisor, who was located in Cedar Rapids, Iowa, that she woke up
8  in the middle of the night to find her male colleague naked on the side of the bed. *Id.* at *3. Ms.
9  Anderson brought claims for sexual harassment and failure to prevent under FEHA. *Id.* *4-*5.

10  Despite the egregious conduct, and the fact that Ms. Anderson was a California resident,
11  the court found that FEHA did not apply. 2015 WL 1487074, at *4. ("The Court concludes that
12  FEHA is inapplicable when the challenged conduct occurs outside of California."). The Court
13  rejected Anderson's argument that "FEHA was enacted to protect California residents against
14  [harassment] in connection with their employment in California." *Id.* at *5 (alteration in original).
15  The Court found "[t]his proposition misapprehends the concept of extraterritoriality, which
16  concerns legislation that regulates conduct that occurs in a foreign jurisdiction-regardless of the
17  plaintiff's residency." *Id.* (citing *Diamond Multimedia Sys., Inc. v. Superior Ct.*, 19 Cal. 4th 1036,
18  1060 (Cal. 1999)). The Ninth Circuit affirmed this decision. *Anderson v. CRST Int'l, Inc.*, 685 F.
19  App'x at 526 ("Thus, Anderson's claims under the FEHA fail because they are based on conduct
20  that occurred outside the state.").

21  Here, Ms. Gowan was not a California resident, and she cannot bring FEHA claims for
22  conduct that occurred outside of California. Accordingly, her claims are limited to challenged
23  conduct that occurred in California within one year of her filing a written charge with DFEH.
24  *Mock*, 2015 WL 5604394, at *7. Ms. Gowan argues that the Court should consider the "totality of
25  the circumstances" and that FEHA applies because the conduct was "ratified" in California, Opp'n
26  10, but she cites no case law to support the latter point. The Court finds that *Anderson* makes clear
27  that, regardless of where conduct was ratified, FEHA only applies to conduct that occurs in
28  California. Gowan cites *Wysinger v. Automobile Club of Southern California*, 157 Cal. App. 4th

413, 424 (Cal. Ct. App. 2007) for her "totality of the circumstances" argument, but *Wysinger* only involves California-based conduct and does not support an expansion of FEHA liability to events that occurred extraterritorially. The Court finds that the law is clear that FEHA does not apply extraterritorially.

Ms. Gowan does not dispute the one-year filing requirement. Opp'n 23. She argues that all evidence relating to her constructive termination claim may be considered due to her timely DFEH filing, and she argues that untimely evidence on all charges may be considered as a "continuing violation." *Id.* However, it is axiomatic that there must be actionable conduct within the one-year statute of limitations first before addressing questions about what untimely evidence could ultimately be considered. Accordingly, the Court must evaluate the challenged conduct that occurred in California after March 30, 2017.

There are three claimed events that occurred in California during the relevant time period. 1) In August 2017, Ms. Gowan complained to her boss, Ms. Zakszeski, and Ms. Cream about Mr. Conley's past conduct. Gowan Dep. 253:2-23. Ms. Gowan testified that her complaint was investigated. Gowan Dep. 255:23-25. 2) After moving into her human resources role, Ms. Byerly informed Ms. Gowan that Mr. Conley and Mr. Van Galder had made sexist comments on a conference call, and Ms. Gowan filed a complaint on her behalf. Ms. Gowan felt "shunned" by Mr. Glynn after this because he wouldn't greet her with a hug. Pl.'s Gowan Dep. Volume II 113:10-116:25. And 3) an October 2017 human resources-related meeting in San Jose where Mr. Ladd made two gender-based comments about two female employees who were not present. Defs.' Gowan Dep. Volume II 38:22-39:9, Gowan Decl. ¶ 32. None of these events can, as a matter of law, support a claim of discrimination, harassment, retaliation, or wrongful discharge claim under FEHA.

### 1. Ms. Gowan Did Not Suffer An Adverse Employment Action in California, Thus Precluding her Discrimination, Retaliation, and Wrongful Termination Claim Under FEHA

Ms. Gowan cannot establish an adverse employment action that occurred in California, which precludes her discrimination, retaliation, and wrongful termination claims. The events leading up to her decision to accept a new position in California (and the decision itself) occurred

13

outside of California, so FEHA does not apply to this job change. That leaves Ms. Gowan's resignation in October 2017, which she argues was a constructive discharge. Opp'n 14. To establish a constructive discharge, an Ms. Gowan must prove "that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." *Turner*, 7 Cal. 4th at 1251. The Ninth Circuit has further clarified that

> constructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer.

*Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (citing *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000)). The Ninth Circuit acknowledges that "We set the bar high for a claim of constructive discharge." *Poland*, 494 F.3d at 1184. Ms. Gowan's own actions after her resignation demonstrate that, as a matter of law, her working conditions were not so intolerable or aggravated that she was constructively discharged.

First, when Ms. Gowan resigned in October 2017, she wrote to the president of her business unit, "I love Stryker - and specifically I love our Endo BU [business unit]; I do not say that lightly." Ex. 27, Pierce Email. Ms. Gowan later testified that this statement was true and accurate when she made it. Defs.' Gowan Dep. Volume II 128:16-129:13. Second, Ms. Gowan continued to work for Stryker for two more months, which significantly undercuts a finding of conditions so intolerable or aggravated that she was compelled to resign. Ex. 32, Dec. 14, 2017 Email. And third, Ms. Gowan *continued to apply for positions at Stryker after tendering her resignation* from October through December 2017. Gowan Dep. 144:9-25.  "[A]s a matter of law, these are not the actions of someone who finds [her] working conditions so intolerable that [she] felt compelled to resign." *Poland v. Chertoff*, 494 F.3d 1174, 1185 (9th Cir. 2007) (noting that after plaintiff continued to work the same job three months after he decided to retire). Accordingly, Ms. Gowan cannot, as a matter of law, establish she suffered an adverse employment action covered by FEHA, and summary judgment is GRANTED for Stryker on her discrimination,

14

retaliation, and wrongful termination claims.

### 2. The October 2017 Meeting in San Jose Cannot Support a Harassment Claim Under FEHA

The Parties agree that Ms. Gowan does not need to establish an adverse employment action for a harassment claim under FEHA.[7] "[H]arassment focuses on situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 706 (Cal. 2009) (emphasis in original). Ms. Gowan must establish that her work environment was both objectively and subjectively hostile, that she perceived it as such and a reasonable person would have as well. *Cozzi v. County of Marin*, 787 F. Supp. 2d 1047, 1069 (N.D. Cal. 2011). "A determination of whether conduct qualifies as hostile under this standard includes its frequency, severity, and nature, including whether it is physically threatening or humiliating as opposed to merely verbally offensive." *Id.* at 1070 (citing *Galdamez v. Potter*, 415 F.3d 1015, 1023 (9th Cir. 2005)). "Most importantly, Title VII and FEHA do not proscribe a general civility code in the workplace." *Cozzi*, 787 F. Supp. 2d at 1070 (citing *Manatt v. Bank of America, N.A.*, 339 F.3d 792, 798 (9th Cir.2003), *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998), *Lyle*, 38 Cal. 4th at 295. Further,

> [T]he law does not exhibit "zero tolerance" for offensive words and conduct. Rather, the law requires the plaintiff to meet a threshold standard of severity or pervasiveness. We hold that the statement within the instruction that severe or pervasive conduct requires more than "occasional, isolated, sporadic, or trivial" acts was an accurate statement of that threshold standard.

*Etter v. Veriflo Corp.*, 67 Cal. App. 4th 457, 467 (Cal. Ct. App. 1998), *as modified on denial of reh'g* (Nov. 16, 1998).

Here, in the light most favorable to Ms. Gowan, Mr. Ladd made comments about two female employees who were not present that suggested the fact that they were women was contributing to their performance issues. These comments alone cannot support a claim for harassment. *See Kortan v. California Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000).

---

[7] California courts apply the same standard as Title VII in evaluating hostile work environment/harassment claims under FEHA "and seek guidance from Title VII decisions." *Cozzi v. County of Marin*, 787 F. Supp. 2d 1047, 1069 (N.D. Cal. 2011) (citing *Lyle*, 38 Cal. 4th at 279).

15

*Kortan* involved allegations of harassment that occurred over a one-month period. 217 F.3d at 1106-07. In a conversation with the plaintiff, a woman, the defendant referred to another woman as "regina," and said that this person "laughs like a hyena." *Id.* He referred to another woman as a "madonna," "regina" and a "castrating bitch." *Id.* at 1107. In the same conversation, the defendant referred to women generally as "bitches" and "histrionics." *Id.* Nonetheless, while there was no question that the comments were "offensive," the Ninth Circuit held there was not a claim for harassment. *Id.* 1110-11. The court emphasized that "[a]s unpleasant as Atesalp's outburst was, the comments were about other people. He never directed a sexual insult at Kortan. He also told her, on or after February 3, that she wasn't Artemis as he had previously thought but Medea. Even so, Atesalp's utterances were just offensive." *Id.* at 1110 (citation omitted). While this behavior was vile, if the Ninth Circuit has held that the conduct described in *Kortan* does not constitute harassment, then Mr. Ladd's comments, made in a single meeting, here cannot constitute harassment as a matter of law either. Accordingly, summary judgment is GRANTED for Stryker on Ms. Gowan's harassment claim.

### 3. Because There Are No Violations of FEHA During the Relevant Time Period, Ms. Gowan's Arguments Regarding Continuing Violations Necessarily Fail

"As we have said, ordinarily, a plaintiff cannot recover for acts occurring more than one year before the filing of the DFEH complaint." *Jumaane v. City of Los Angeles*, 241 Cal. App. 4th 1390, 1402 (Cal. Ct. App. 2015) (citations omitted). "However, the continuing violation doctrine permits a plaintiff to recover for unlawful practices occurring outside the limitations period *if the practices continued into that period*." *Id.* (emphasis added). "The continuing violation doctrine requires proof that the conduct occurring outside the limitations period was (1) similar or related to the conduct that occurred within the limitations period; (2) the conduct was reasonably frequent; and (3) the conduct had not yet become permanent." *Id.* (citations omitted).

The Court has found that no FEHA violations occurred in the year prior to Ms. Gowan filing the DFEH complaint. The Court cannot apply FEHA to Mr. Conley's conduct, all of which indisputably occurred outside of California. *Anderson*, 2015 WL 1487074, at *4. It does not appear that Ms. Gowan attempts to argue that allegations related to conduct that happened in

16

California in 2013—before Ms. Gowan decided to rejoin Stryker in 2014—can constitute "reasonable frequency," *see* Opp'n 24, and the Court agrees any conduct that predates her decision to rejoin Stryker in 2014 are too distant in time to be considered "reasonably frequent." Accordingly, the Court finds that Ms. Gowan may not defeat the statute of limitations under a continuing violation theory.

### 4. Ms. Gowan's Second Claim for Failure to Promote on the Basis of Sex Exclusively Relies on Time-Barred Conduct or Conduct That Occurred Outside of California And Necessarily Fails

To support her failure to promote on the basis of sex claim, Ms. Gowan cites a 2013 conversation in California, which predates her decision to leave Stryker, move to Colorado, and subsequently return to Stryker in a different role in 2014. Gowan Decl. ¶ 3. The Court finds as a matter of law that conduct that occurred during a prior job stint cannot support a failure-to-promote claim for a different job stint. Ms. Gowan also cites a 2016 conversation with Mr. Conley in which they discussed a regional trainer position, Pl.'s Gowan Dep. 72:24-77:7, ECF 72-2. Ms. Gowan has presented no evidence that this conversation occurred in California and is thus not actionable. She also cites her May 2017 conversation in Dallas with Mr. Glynn, in which he told her she was better suited for management opportunities in human recourses. Gowan Decl. ¶¶ 22-23. This, too, occurred outside of California. Accordingly, Ms. Gowan's claim for failure to promote fails, and summary judgment is GRANTED on this claim.

### 5. Ms. Gowan's Derivative Claim for Failure to Prevent Discrimination Necessarily Fails

Because Ms. Gowan's underlying FEHA claims have failed, there can be no claim for failure to prevent discrimination, harassment, or retaliation. *Dickson v. Burke Williams, Inc.*, 234 Cal. App. 4th 1307, 1314 (Cal. Ct. App. 2015), *as modified on denial of reh'g* (Mar. 24, 2015). Accordingly, summary judgment is GRANTED for Stryker on this claim.

### C. Ms. Gowan Has Abandoned Her Claims Under California Labor Code Section 1102.5

Ms. Gowan brought a wrongful constructive termination claim and retaliation claim under California Labor Code Section 1102.5. 3AC ¶¶ 40-50. However, Ms. Gowan did not address Stryker's arguments regarding these claims in her opposition brief. At the July 1, 2021 hearing for

this motion, the Court noted that these claims were abandoned, and Ms. Gowan's counsel did not object. Accordingly, summary judgment is GRANTED for Stryker on these claims.

### D. Ms. Gowan's Claim for Negligent Hiring Fails, Supervision, and Retention Because It Is Based on Conduct that Occurred Outside of California

Ms. Gowan brings a claim for negligent hiring, supervision, and retention. 3AC ¶¶ 37-39. Ms. Gowan's claim is based on the conduct of Mr. Conley, and she argues that she complained about him to Mr. Glynn and Ms. Cream to no avail. Opp'n 22-23. None of these people are based in California, and none of Ms. Gowan's conversations with these people occurred in California.

"In order for a claim of negligent supervision to survive, the court must first find that a 'foundational predicate of harassment or discrimination' existed." *Greenfield v. Am. W. Airlines, Inc.*, No. C 03-5183 MHP, 2005 WL 756602, at *21 (N.D. Cal. Mar. 31, 2005) (citing *Trujillo v. North County Transit Dist.*, 63 Cal. App. 4th 280, 289 (Cal. Ct. App. 1998)). For the reasons stated above, the Court has not found that a foundational predicant of harassment or discrimination existed under California law. Accordingly, summary judgment is GRANTED on this claim.

### E. Ms. Gowan's Claim for IIED Is Barred By The California Workers' Compensation Act

Finally, Stryker argues that Ms. Gowan's claim for IIED is barred by the California Workers' Compensation Act ("WCA"), Cal. Lab. Code § 3601(a). Mot. 21-23. Ms. Gowan argues that the WCA exclusivity rule only applies if the conduct is a "normal risk" of employment, and FEHA violations are not. Opp'n 21-23. The Court finds that even if the alleged conduct occurred in California (it did not), the law clearly demonstrates that the IIED claim is barred by the WCA.

For the reasons stated above, the Court does not find that the conduct Ms. Gowan challenges constitutes FEHA violations. "Moreover, courts have found that 'even 'severe emotional distress' arising from 'outrageous conduct' that occurred 'at the worksite, in the normal course of the employer-employee relationship' is the type of injury that falls within the exclusive province of workers' compensation.'" *Tandon v. GN Audio USA, Inc.*, No. 5:19-CV-00212-EJD, 2021 WL 242916, at *16 (N.D. Cal. Jan. 25, 2021) (quoting *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 161–62, (Cal. Ct. App. 2014); *see also Miklosy v. Regents of Univ. of California*, 44 Cal. 4th 876, 902 (Cal. 2008) (same). Accordingly, summary judgment is

GRANTED for Stryker on Ms. Gowan's IIED claim.

### F. Conclusion

The Court does not doubt that Ms. Gowan had a claim against Mr. Conley for the way he treated her—under Colorado or federal law. Unfortunately, Ms. Gowan, a non-California resident, has tried to bring this suit under California law, and the conduct that would support her claims happened outside of California. The Court has no choice but to grant summary judgment in favor of Stryker.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Stryker's motion is GRANTED, and Ms. Gowan's case is DISMISSED.

Dated: August 4, 2021

_____
BETH LABSON FREEMAN
United States District Judge